# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BRIAN CROUCH, )
)
        Plaintiff, )
)
v. )   Case No. 18-02682-DDC-KGG
)
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
)
        Defendant. )
_____)

## MEMORANDUM & ORDER GRANTING
## DEFENDANT'S MOTION TO STRIKE EXPERTS

Now before the Court is Defendant's Motion to Strike Plaintiff's Expert Disclosures. (Doc. 49.) After review of the parties' submissions, for the reasons set forth below, the undersigned Magistrate Judge **GRANTS** Defendant's motion.

## FACTUAL BACKGROUND

**A.    Accident and Treatment.**

The present lawsuit results from an April 22, 2017, motor vehicle accident involving a taxi in which Plaintiff was a passenger which was struck by an automobile driven by a drunk driver, who is now incarcerated. Plaintiff has resolved his claims with the drunk driver, but seeks to recover underinsured

1

motorist benefits through an insurance policy issued to him by Defendant State Farm Mutual Automobile Insurance Company.

Plaintiff alleges that, following the accident,

> [he] was taken by private vehicle to St. Luke's Hospital in Kansas City, Missouri, where he was treated and released on the same date. After this initial emergency room visit, he followed-up as instructed with his primary care physician, Dr. Neal Erickson. Dr. Erickson, as most primary care physicians are taught and trained to do, referred plaintiff for further imaging that was conducted at St. Joseph Medical Center. Upon information and belief, Dr. Erickson did not conduct any material activities other than receiving the subjective reports of pain and perhaps conducting a cursory examination of the plaintiff prior to referring the plaintiff for further evaluation. At St. Joseph Medical Center, the plaintiff underwent further imaging of his chest on May 26, 2017. Dr. Luke Wilson and Stacey Bateman were the medical providers who conducted and interpreted this chest x-ray, which depicted rib fracture deformities involving multiple right-sided anterior and posterior ribs. This includes healing fractures of the anterior second right rib, anterior and posterior third right rib posterior and anterolateral fourth right rib. A subacute to chronic appearing fracture of the distal third of the right clavicle and a subacute to chronic appearing fracture of the right T1 transverse process. The fractures discussed demonstrate mild callus formation but no complete bony ankylosis. Dr. Wilson also noted chronic-appearing lateral rib fracture deformities involving the sixth and seventh left ribs. Since this imaging and because of the nature of the multiple fractures he has sustained and the lack of surgical or other active medical intervention that can be performed, plaintiff has not received any additional, material treatment.

(Doc. 53, at 2-3.)

Plaintiff served his expert disclosures on August 9, 2019, pursuant to Fed.R.Civ.P. 26(a)(2). Therein, he identified Kevin Witte, D.O. and Cori Ingram, BSN, RN, CNLCP as his retained experts. (Doc. 49-1.) He also identified his treating physicians as well as the investigating police officers as non-retained experts. (*Id.*) Supplemental designations, discussed *infra*, were submitted with Plaintiff's response to Defendant's motion. (*See* Doc. 53-3.) The supplemental designation limited Plaintiff's non-retained, treating physician experts to Dr. Neal Erickson, Dr. Luke Wilson, and Stacey Bateman. (*Id.*, at 3.)

**B.    Substance of Pending Motion.**

Defendants bring the present motion to exclude expert testimony, arguing that Plaintiff's disclosures were "deficient in the following respects: (1) Plaintiff failed to include a list of publications and a list of testimony for Dr. Witte; and (2) Plaintiff's designations for non-retained experts were too vague."[1] (Doc. 49, at 2.) Plaintiff responds by offering supplemental disclosures and stating he will agree for Defendant to have additional time to designate its own experts and conduct discovery. (Doc. 53, at 3-4.) Plaintiff continues that

> [t]here is no surprise in the proposed testimony of Dr. Erickson nor the radiologist at St. Joseph Health Center given their limited time and exposure in treating the plaintiff. In essence, Dr. Erickson would testify that the plaintiff followed-up with him after an initial emergency

---

[1] The issue involving Dr. Witte's publications has apparently been resolved. (Doc. 53, at 1.) Thus, nothing in the present motion implicates Plaintiff's retained experts.

3

> room visit and the radiologist would offer testimony
> consistent with the narrative contained in the x-ray taken
> of the plaintiff's chest taken a month after the accident.
> Any claimed deficiency has been cured by the proposed
> disclosures attached to this filing, which do contain the
> sufficient main points of the very limited subject matter
> involved in the plaintiff's visits to his primary care
> physician and for additional imaging of his chest. With
> respect to the Court, plaintiff fails to see how trial almost
> a year from now would be disrupted through any
> perceived issues in the testimony of these two treating
> medical providers and, again, it is not the plaintiff's
> intent to frustrate the process of discovery on the issue.

(*Id.*, at 4.)

Defendant replies that Plaintiff's supplementations remain "insufficient." (Doc. 56, at 4.) According to Defendant, the supplementation "does nothing more than summarize the type of care each of the treaters provided and refer to the records and reports each of the treaters generated" and "still does not specifically describe the main points of the entirety of the healthcare providers' anticipated testimony." (*Id.*) Defendant continues that Plaintiff's disclosures regarding the investigating police officers are "[e]ven more vague." (*Id.*) According to Defendant,

> Plaintiff's designation simply states that each of these
> officers 'performed specific, identifiable tasks relating to
> Mr. Crouch and generated reports/documents of his
> investigation in the subject vehicle accident' that 'have
> been produced in discovery, are attached to these
> disclosures and are incorporated by reference.' The
> designation then continues that each of these officers
> 'will testify and provide opinions regarding the

investigation and reconstruction of the traffic accident at issue.'

(*Id.*) Defendant argues that "[t]his generic designation does not provide [it] with any guidance as to what the main points of the entirety of the testimony anticipated from these officers will be." (*Id.*)

## ANALYSIS

**A.  Standards for Disclosure of Expert Testimony.**

The disclosure of expert testimony is governed by Fed.R.Civ.P. 26(a)(2). Non-retained experts are controlled by subsection (C) of the Rule, which provides that

> if the witness is not required to provide a written report, this disclosure must state:
>
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed.R.Civ.P. 26(a)(2)(C).

> The purpose of Rule 26(a)(2) is to require disclosure of expert testimony 'sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.' When the expert disclosure rules are violated, Fed.R.Civ.P. 37(c) mandates that the information or witness not fully disclosed be barred from supplying evidence on a

> motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.

*Chambers v. Fike*, No. 13-1410-RDR, 2014 WL 3565481, at *3 (D. Kan. July 18, 2014).

A treating physician's testimony may include opinions regarding "'prognosis, the extent of present and future disability, and the need for future medical treatment,'" so long as the opinions are based on the physician's personal knowledge gained from the care and treatment of the plaintiff. *Adrean v. Lopez*, 2011 WL 6141121 (N.D. Okla. Dec. 9, 2011) (quoting *Goeken v. Wal-Mart Stores, Inc.*, 2001 WL 1159751, at *3 (D. Kan. Aug. 16, 2001)). The testimony also may include opinions as to causation, but only "to the limited extent that opinions about the cause of an injury are a necessary part of a patient's treatment." *Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 479 (D. Kan. 2001); *see also Richard v. Hinshaw*, 2013 WL 6709674, at *2 (D. Kan. Dec. 18, 2013) (holding that "matters within the scope of the [treating physician's] treatment may include opinions about causation, diagnosis, and prognosis"); *Trejo v. Franklin*, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007) (holding that "treating physician opinions regarding causation and prognosis based on examination and treatment of the patient" are proper pursuant to Rule 26(a)(2)(C)).

**B.     Sufficiency of the Non-Retained Expert Witness Designations.**

Violations of Fed.R.Civ.P. 26(a)(2) are addressed pursuant to Fed.R.Civ.P. 37(c). Subsection (c)(1) of that rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).

Fed. R. Civ. P. 37(c)(1). As such, "the determinative issue before the Court is whether [the] expert disclosures comply with Rule 26(a)(2)." *Chambers v. Fike*, No. 13-1410-RDR, 2014 WL 3565481, at *3 (D. Kan. July 18, 2014).

In making this determination, the Court looks at the substance of the disclosures submitted.

> At a minimum, the disclosure should obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert. It is not enough to state that the witness will testify consistent with information contained in the medical records or consistent with the testimony given during his or her deposition. Instead, **Rule 26(a)(2)(C) disclosures must contain more than a passing reference to the general**

7

> **type of care a treating physician provided. They must summarize actual and specific opinions.** The disclosing party should provide 'a brief account that states the main points' of the entirety of the anticipated testimony. **This does not mean that the disclosures must outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail.** Imposing these types of requirements would make the Rule 26(a)(2)(C) disclosures more onerous than Rule 26(a)(2)(B)'s requirement of a formal expert report. That was certainly not the intent behind the 2010 amendments to the Rule. Instead, **the court 'must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.'**

*Id.*, at 7 (citations omitted) (emphasis added).

Should the Court find a violation of Rule 26(a) has occurred, the Court then has broad discretion to determine if the violation is justified or harmless. ***Woodworker's Supply, Inc. v. Principal Mt. Life Ins. Co.***, 170 F.3d 985, 993 (10th Cir. 1999). In making this determination, the Court guided by these four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness. *Id*.

The undersigned Magistrate Judge previously addressed the sufficiency of non-retained expert opinions in ***Shepeard v. Labette Co. Med. Cntr.***, No. 11-1217-MLB-KGG, 2013 WL 881847 (D. Kan. March 7, 2013). Certain of the designations in that case were found to be factually insufficient because "not a

single fact [was] referenced" in the disclosures "beyond a passing, introductory reference to the general type of care the individuals provided." (*Id*., at *1.) The opinions were also not adequately summarized, as the undersigned held that the disclosing party did "little more in regard to the opinions on which these individuals will testify, generally referring to 'medical opinions on all aspects of the case' (witnesses A, B), 'expert opinions on paramedic care' (witnesses C, D, E, F), and 'opinion testimony related' to care given as an air ambulance nurse (witnesses H, I)." (*Id*.) The undersigned held that this was "patently insufficient as no actual, specific opinions have been summarized or even referenced." (*Id*.)

Other expert designations in *Shepeard* were, however, sufficient where the individuals "performed specific, identifiable tasks relating to the decedent and/or the accident at issue – the autopsy (witness G) and . . . responding to the accident (witnesses L, M)." (*Id*.) Also persuasive to the Court was the fact that these individuals generated "reports/documents . . . which would provide [the recipient of the disclosures] with adequate information as to the involvement and relevant opinions of these witnesses."[2] (*Id*.) The Court will thus review the designations of treating health care provider witnesses as well as the investigating police officers to determine whether they "contain more than a passing reference to the general

---

[2] The Court notes that the motion presented in *Shepeard* was a motion to compel supplemental information from non-retained expert witnesses rather than a motion to strike or exclude their testimony as was filed in the present case.

type of" involvement with Plaintiff's care or the accident on one hand while also taking "care against requiring undue detail" in the submissions on the other. *Chambers*, 2014 WL 3565481, at *7.

    1.    **Non-retained health care providers.**

As stated above, Defendant argues that the supplemental designations of Plaintiff's non-retained treating health care providers do "nothing more than summarize the type of care each of the treaters provided and refer to the records and reports each of the treaters generated" and "still does not specifically describe the main points of the entirety of the healthcare providers' anticipated testimony." (Doc. 56, at 4.) Defendant complains that these "generic" designations do "not provide [it] with any guidance as to what the main points of the entirety of the testimony anticipated from these officers will be." (*Id.*)

In the initial designations, Plaintiff merely indicated that these treating health care providers "will testify and provide opinions based upon [their] own personal care and treatment of plaintiff and the reason for such treatment, including causation, diagnosis, prognosis and other opinions arising out of [their] treatment of the plaintiff." (Doc. 49-1, at 3.) In the supplemental designations, Plaintiff includes the following additional information regarding Dr. Erickson:

> Dr. Erickson performed specific, identifiable tasks relating to [Plaintiff] and generated reports/documents of his personal care and treatment of [Plaintiff]. Those reports/documents have been produced in discovery. Dr.

10

> Erickson received subjective complaints of pain and discomfort from the plaintiff following the auto accident at issue, evaluated Mr. Crouch and referred him to St. Joseph Medical Center for further imaging and evaluation.

(Doc. 53-3, at 3.) The supplemental designation regarding Dr. Wilson and Stacey Bateman provides the following additional information:

> Dr. Wilson performed specific, identifiable tasks relating to [Plaintiff] and generated reports/documents of his personal care and treatment of [Plaintiff]. Those reports/documents have been produced in discovery. Dr. Wilson evaluated a CT of [Plaintiff's] chest taken on or about May 26, 2017. Dr. Wilson made findings or [sic] rib fracture deformities involving multiple right-sided anterior and posterior ribs. This includes healing fractures of the anterior second right rib, anterior and posterior third right rib[,] posterior and anterolateral fourth right rib. A subacute to chronic appearing fracture of the distal third of the right clavicle and a subacute to chronic appearing fracture of the right Tl transverse process. The fractures discussed demonstrate mild callus formation but no complete bony ankylosis. Dr. Wilson also noted chronic-appearing lateral rib fracture deformities involving the sixth and seventh left ribs. Dr. Wilson's report is attached to these disclosures and is incorporated by reference.

(*Id*.)

The Court finds that these supplemental designations of non-retained, treating health care providers clearly "contain more than a passing reference to the general type of" involvement with Plaintiff's care. ***Chambers***, 2014 WL 3565481, at \*7. That stated, the supplemental disclosures do not obviate the danger of unfair

surprise regarding the opinion testimony of these non-retained experts because Plaintiff has not indicated what opinions he intends to illicit from these health care providers regarding Plaintiff and/or the relationship between the accident at issue and Plaintiff's injuries. The Court thus **GRANTS** Defendant's motion as to Plaintiff's designations of the non-retained, treating health care providers. Plaintiff shall have until **November 4, 2019**, to provide further supplementation of the expert designations addressing only the deficiencies identified herein. Defendant shall have until **November 18, 2019**, to supplement its designations accordingly.

    **2.    Investigating police officers.**

The initial designations stated that the investigating police officers would "testify and provide opinions regarding the investigation and reconstruction of the traffic accident at issue." (Doc. 49-1, at 3-4.) In response to Defendant's complaints, Plaintiff also supplemented the designations of these police officers. (Doc. 53-3.) Defendant, however, describes the supplemental designations as "even more vague" than the designations of the treating health care providers. (Doc. 56, at 4.)

The supplemental designations regarding the investigating police officers specify that each officer "performed specific, identifiable tasks relating to [Plaintiff] and generated reports/documents of his investigation in the subject vehicle accident. Those reports/documents have been produced in discovery, are

attached to these disclosures and are incorporated by reference." (Doc. 53-3, at 4-5.) As an initial matter, the Court finds that Plaintiff's regurgitation of language from the *Shepeard* decision – stating that the officers "performed specific, identifiable tasks relating to" Plaintiff – would not, in and of itself, constitute an adequate designation. The designating party is required to actually indicate which "specific, identifiable tasks" were actually performed by the designated officers.

Further, the Court acknowledges that these supplemental designations contain less specifics than those submitted for the non-retained, treating health care providers. That stated, the Court anticipates that Plaintiff may not have had as much access to these police officers as he would have had with this treating health care providers.

The designated individuals performed specific, identifiable tasks relating to the decedent and/or the accident at issue by investigating and reconstructing the accident at issue. The reports/documents generated by these witnesses – non-retained experts for whom no report is necessary – have been produced (Doc. 53-3, at 22-56), and the reports detail said tasks. The Court finds that the designations, taken in conjunction with the reports, clearly contain "more than a passing reference to the general type of" involvement these officers had with the accident at issue. *Chambers*, 2014 WL 3565481, at *7. Even so, while these reports "should provide Plaintiff with adequate information as to the involvement" of these

13

witnesses, they <u>do not</u>, in the Court's opinion, provide adequate information as to the "relevant opinions of these witnesses." *Shepeard*, 2013 WL 881847, at *1.

Again, these supplemental disclosures do not obviate the danger of unfair surprise regarding the opinion testimony of these non-retained experts because Plaintiff has not indicated what opinions he intends to illicit from the investigating officers regarding the accident at issue (*e.g.*, what caused the accident and/or who is at fault). The Court thus **GRANTS** Defendant's motion as to Plaintiff's designations of the non-retained, investigating police officers. Plaintiff shall have until **November 4, 2019**, to provide further supplementation of the expert designations addressing only the deficiencies identified herein. Defendant shall have until **November 18, 2019**, to supplement its designations accordingly.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike (Doc. 49) be **GRANTED** as more fully set forth, including the revised deadlines, above.

**IT IS SO ORDERED.**

Dated this 21st day of October, 2019, at Wichita, Kansas.

                                   S/ KENNETH G. GALE
                                   HON. KENNETH G. GALE
                                   U.S. MAGISTRATE JUDGE